UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                    v.

TORRIE SINGLETON,

                              Defendant.

_____

REPORT & RECOMMENDATION

06-CR-6234L

### PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated October 10, 2007, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 48).

Defendant Torrie Singleton is charged in a three-count indictment.  The first count charges Singleton with possessing marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  The second count of the indictment charges Singleton with possessing a firearm in furtherance of the offense charged in the first count, in violation of 18 U.S.C. § 924(c)(1).  The final count charges Singleton with possessing a firearm after having previously been convicted of crimes punishable by terms of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Each of the counts alleges that the charged crime occurred on or about May 19, 2006.  (Docket # 15).

Currently before this Court for Report and Recommendation are Singleton's motions to suppress statements and physical evidence seized from his residence at 119 Saratoga Avenue. (Docket # 21). The government opposes both motions. (Docket # 23).

## PROCEDURAL HISTORY

Singleton has moved to suppress statements and physical evidence seized from his residence at 119 Saratoga Avenue. (Docket # 21). An evidentiary hearing was conducted before this Court and, by Report and Recommendation dated April 21, 2008, I found that Singleton had been subjected to an unlawful search and seizure in violation of his Fourth Amendment rights.[1] (Docket # 60). Pursuant to this Court's direction, a further evidentiary hearing was thereafter conducted to determine whether suppression of statements made by Singleton and evidence seized from his apartment was required under the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). For the following reasons, I find that it is.

Although familiarity with this Court's previous Report and Recommendation is assumed, the following is a brief summary of the relevant factual background. Several days prior to May 19, 2006, Officer Robert DiNicola of the Rochester Police Department received a telephone call from a known and reliable informant who reported that a black male staying at 119 Saratoga Avenue was "selling drugs from that location and had a handgun." DiNicola shared the

---

[1] The government has filed objections to this Court's Report and Recommendation, which are currently pending before the district court. (Docket # 64).

informant's tip with fellow Police Officer Kenneth Coniglio.  During the ensuing days, DiNicola

and other officers drove past the house at 119 Saratoga Avenue, but did not observe any activity.

On May 19, 2006, at approximately 9:00 p.m., DiNicola received a second call

from the same informant.  During this call, the informant reported that the individual who lived

at 119 Saratoga Avenue had walked to a store on Lyell Avenue and was wearing tan boots, gray

sweat pants and a long-sleeved shirt.  DiNicolo informed Coniglio of the call shortly thereafter,

and Coniglio responded to the area of Saratoga Avenue, where he observed a male matching the

description walking on the street carrying a grocery bag.  Coniglio approached the male, later

identified as Singleton, and asked him, "Do you got a minute?"  Singleton responded, "Sure,"

and Coniglio immediately directed him to place his hands behind his back while he conducted a

pat-frisk for weapons.  During the search, Coniglio asked Singleton whether he was on parole

and whether he had a curfew.  Singleton replied that he was on parole and that his curfew was

9:00 p.m.  Based upon that response, Singleton was detained and ultimately arrested by a parole

officer for violation of his curfew.  (*See* Docket # 60, 2-8).

Following his arrest, a parole search of Singleton's residence was conducted, and

a quantity of marijuana and a handgun were discovered.  Singleton was subsequently transported

to an interview room in the Monroe County Public Safety Building, where Coniglio advised him

of his *Miranda* rights.  Singleton agreed to waive the rights and then provided a statement to

Coniglio.  (Docket # 60, 7-8).

As previously noted, Singleton moved to suppress the statements made by him, as

well as the handgun and narcotics seized from 119 Saratoga Avenue.  (Docket # 21).  In my

previous Report and Recommendation, I found that Coniglio's initial encounter and search of

Singleton constituted a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 30 (1968), thus requiring

reasonable suspicion.  Upon careful consideration, and for the reasons explained in detail in my

earlier report, I found that reasonable suspicion was lacking and thus concluded that the stop and

search of Singleton violated the Fourth Amendment.  (Docket # 60).


## ADDITIONAL FACTUAL BACKGROUND

Having found that Coniglio lacked reasonable suspicion to stop and search

Singleton, the question remaining is whether the statements made by Singleton during the

encounter and at the police station and the evidence seized from Singleton's residence must be

suppressed as fruit of the unlawful search.  *See United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.)

("[a]ny evidence seized based upon an illegal stop is subject to the fruit of the poisonous tree

doctrine, and may be suppressed") (internal quotation omitted) (citing *Wong Sun v. United States*,

371 U.S. 471 (1963)), *cert. denied*, 513 U.S. 877 (1994).  Because the record was insufficiently

developed on this issue at the time of my earlier report, I conducted a further evidentiary hearing

on May 6 and July 1, 2008.  During that hearing, the government offered testimony of Officer

Coniglio and New York State Parole Officer David Galbo.  Singleton testified on behalf of the

defense.

As discussed more fully below, the government argues that the record as it has

now been developed demonstrates that the taint of the illegal stop and seizure had been

sufficiently attenuated by the time of the search of Singleton's residence and his later

interrogation to justify denying suppression.  Singleton vigorously disagrees.

### A.  **Testimony of Officer Coniglio**

Officer Coniglio testified that on May 19, 2006, at approximately 9:20 p.m., he observed Singleton walking northbound on Saratoga Avenue.  (Tr. 70-71).[2]  Coniglio approached Singleton and asked him whether he had a minute.  Immediately thereafter, Coniglio directed Singleton to put his hands behind his back so that he could perform a pat-frisk.  (Tr. 72). Following the frisk, during which he learned that Singleton was a parolee subject to a 9:00 p.m. curfew, Coniglio contacted a police officer whom he knew to be working with a parole officer that evening.  The officer instructed Coniglio to detain Singleton so that a parole officer could respond.  Coniglio then placed Singleton in the rear seat of his patrol car, where he remained for approximately ten minutes until the parole officer arrived.  (Tr. 73-74).

Throughout the encounter, Singleton behaved cooperatively and did not appear to be under the influence of alcohol or drugs.  (Tr. 74).  Singleton did not appear to be suffering from any injury or illness, and he spoke in a normal conversational tone.  (Tr. 74-75).  While detained in the car, Singleton was not physically touched or questioned by any of the officers present.  (Tr. 75-76).

### B.  **Testimony of Parole Officer Galbo**

Parole Officer Galbo testified that several days before May 19, 2006, he was assigned to supervise parolee Torrie Singleton.  (Tr. 100).  After receiving the assignment, Galbo familiarized himself with Singleton's parole file and learned that he had previously been

---

[2]  The transcripts of the suppression hearing conducted before this Court on May 6, 2008 (Docket # 76), and July 1, 2008 (Docket# 78), shall hereinafter be referenced as "Tr. __."

convicted for possession of narcotics. (Tr. 97). Also included within Singleton's file was a

Certificate of Release to Parole Supervision – a form signed by parolees as a requirement of

release from prison that sets forth applicable conditions of parole. (Tr. 101; D.Ex. A).

Singleton's Certificate of Release, which was dated October 4, 2005, provided:

> I, Torrie Singleton, voluntarily accept Parole supervision. I fully
> understand that my person, residence and property are subject to
> search and inspection. I understand that Parole supervision is
> defined by these Conditions of Release and all other conditions that
> may be imposed upon me by the Board or its representatives. I
> understand that my violation of these conditions may result in the
> revocation of my release.

(D.Ex. A). In addition, the fourth enumerated condition of release stated:

> I will permit my Parole Officer to visit me at my residence and/or
> place of employment and I will permit the search and inspection of
> my person, residence and property. I will discuss any proposed
> changes in my residence, employment or program status with my
> Parole Officer. I understand that I have an immediate and
> continuing duty to notify my Parole Officer of any changes in my
> residence, employment or program status when circumstances
> beyond my control make prior discussion impossible.

(Tr. 105; D.Ex. A).

On the morning of May 19, 2006, Galbo performed a routine curfew check of

Singleton. Galbo arrived at 119 Saratoga Avenue between 6:00 and 6:30 a.m., but Singleton was

not home. (Tr. 85-86). Later that day, at approximately 9:25 p.m., Galbo received a radio

broadcast from members of the Rochester Police Department who were in the area of 119

Saratoga Avenue. (Tr. 85). The officers indicated that they had stopped an individual who was

on parole and suspected of violating his curfew. Galbo responded to the area and observed

Singleton sitting in the rear seat of a patrol car. (Tr. 85). When he asked the officers to explain

what was happening, he was told that an individual matching Singleton's description was believed to be selling drugs in the area. The officer further reported to Galbo that he had observed Singleton walking down the street, stopped to talk to him and had learned that he was on parole. (Tr. 85).

At approximately 9:40 p.m., Galbo approached the police car in which Singleton was sitting. (Tr. 86). Although he could not remember whether the door to the vehicle was open or closed, Galbo specifically recalled that Singleton was not handcuffed. (Tr. 87). Galbo asked Singleton what he was doing, and Singleton replied that he had been at the store and was on his way back to his apartment. (Tr. 87).

Because Singleton was out past his curfew and had not been home during the earlier curfew check, Galbo contacted Senior Parole Officer Ted Hicks by telephone and sought his advice. (Tr. 88-89). Hicks instructed Galbo to perform a parole search of Singleton's apartment in order to assure that Singleton was complying with the conditions of his parole supervision. (Tr. 89).

At that point, Galbo asked Singleton for permission to search his residence. Singleton verbally agreed. (Tr. 90). To memorialize that consent, Galbo wrote on a notepad, "I, Torrie Singleton, give my parole officer David Galbo, permission to search my approved parole residence, 119 Saratoga St." Galbo read the consent form aloud to Singleton and asked him to sign it, which he did. (Tr. 91-94; G.Ex. 4). Galbo did not advise Singleton that he had the right to refuse consent. (Tr. 94-95). Before entering the residence, Galbo handcuffed Singleton for reasons of officer safety. (Tr. 95-96). A quantity of marijuana, narcotics paraphernalia, United States currency and a handgun were discovered during the search. (Tr. 96).

### C. **Testimony of Torrie Singleton**

Singleton testified that he was released on parole on October 5, 2005. (Tr. 118). Singleton recalled that the day prior to his release, he signed a form containing various conditions of release, one of which authorized his parole officer to search and inspect his person, residence or property. (Tr. 119; D.Ex. A). Despite such authorization, Singleton testified, his residence had never been searched by a parole officer. (Tr. 119).

During the evening of May 19, 2006, police officers placed Singleton in the rear seat of a patrol car, where he waited until his parole officer arrived. After approximately twenty-five to thirty minutes, Galbo approached the car, asked Singleton for permission to search his apartment and requested that he sign a handwritten consent form. (Tr. 120, 124). Singleton testified that before he signed the form, he asked Galbo why he was being asked to do so. Galbo responded that he intended to perform a search regardless of whether Singleton signed the form. (Tr. 120). Singleton testified that he signed the form even though he believed that he had already given permission to search his residence as a condition of his parole release. (Tr. 121). Singleton also testified that he was aware that if he had refused to consent to Galbo's search, such refusal would amount to a separate violation of the conditions of his parole. (Tr. 128).

### **DISCUSSION**

This Court previously found that Coniglio's seizure and search of Singleton violated Singleton's Fourth Amendment rights because the initial stop was unsupported by reasonable suspicion. I further found that during the unlawful seizure Coniglio learned of Singleton's parole status and his apparent curfew violation. As Coniglio's testimony at the

8

recent hearing makes clear, his decision to detain Singleton in the rear seat of a patrol car until a

parole officer could respond was based upon his curfew violation.  Almost immediately after

Parole Officer Galbo arrived, he asked for and obtained Singleton's consent to search his

apartment at 119 Saratoga Avenue, which resulted in the discovery of narcotics and a firearm.

After that contraband was discovered, Singleton was transported to the Public Safety Building,

was advised of his *Miranda* rights and provided a statement.  The question before the Court on

this record is whether the evidence seized from Singleton's apartment and his subsequent

statements must be suppressed as fruit of the earlier unlawful seizure and search.

> Evidence seized pursuant to an unlawful seizure or search must be suppressed as

the fruit of the poisonous tree.  *See Wong Sun*, 371 U.S. at 484-85; *United States v. Scopo*, 19

F.3d at 781.  "The exclusionary rule prohibits introduction into evidence of tangible materials

seized during an unlawful search, and of testimony concerning knowledge acquired during an

unlawful search."  *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (internal citations

omitted).  This doctrine applies not only to direct evidence, but also to tangible and testimonial

evidence derived from the primary evidence.  *Id.* at 537.  Thus, any evidence acquired as an

indirect product of an illegal search must be suppressed "up to the point at which the connection

with the unlawful search becomes so attenuated as to dissipate the taint."  *Id.* (internal quotation

omitted).

> Here, the government argues that Singleton's consent to the search of his

apartment by Galbo was sufficiently attenuated from the unlawful seizure and questioning to

dissipate its taint and permit the evidence to be used at trial.[3]  Singleton disagrees and argues, in the alternative, that his consent to the search was not voluntary.

It is well-established that the government bears the burden of establishing that a defendant's consent to search was "freely and voluntarily given."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  It is equally well-settled that when such consent follows an illegal search or seizure of the defendant, the government must also prove that the consent was "sufficiently an act of free will to purge the primary taint of the unlawful" act.  *United States v. Vasquez*, 638 F.2d 507, 527-28 (2d Cir. 1980) (quoting *Brown v. Illinois*, 422 U.S. 590, 599 (1975)), *cert. denied*, 450 U.S. 970 (1981).  An illegal investigative stop invalidates a defendant's consent to search unless the government can demonstrate that the taint of the unlawful stop "had been dissipated before the consent was given."  *United States v. Montilla*, 928 F.2d 583, 590 n.3 (2d Cir. 1991).  *See also United States v. Vasquez*, 638 F.2d at 528 (dissipation "ordinarily involves showing that there was some intervening time, space or event").

In the seminal case of *Brown v. Illinois*, 422 U.S. 590 (1975), the Supreme Court identified four factors as relevant considerations in determining whether the taint of an illegal arrest has been adequately dissipated by the time a defendant provides a later confession.  422 U.S. at 603-04.  Those same factors are relevant in determining whether a consent to search has been purged of the taint of an earlier illegal stop.  *United States v. Montilla*, 928 F.2d at 590 n.3.  They are:  "[1] whether a *Miranda* warning was given, [2] the temporal proximity of the illegal stop and the alleged consent, [3] the presence of intervening circumstances, and [4] the purpose

---

[3]  The government does not attempt to demonstrate attenuation with respect to the statements made by Singleton during the time of his initial encounter with the police.  Accordingly, Singleton's motion to suppress statements made by him to Coniglio and Galbo prior to his consent to the search of his residence should be granted.

and flagrancy of the illegal stop." *Id.*; *United States v. Oguns*, 921 F.2d 442, 446-47 (2d Cir.

1990); *see also United States v. Richardson*, 949 F.2d 851, 858-59 (6th Cir. 1991) (applying four

factors to find "consent was not sufficiently attenuated from illegal seizure to dissipate the

taint"). Neither party disputes that these four factors are the appropriate considerations to weigh

in this case.

      In the case at bar, Singleton was neither advised of his *Miranda* rights, nor

advised of his right to refuse consent, before Galbo requested and obtained his permission to

search 119 Saratoga Avenue. (*See* Tr. 94-95, 107, 140). Thus, the first of the four factors weighs

in favor of Singleton. The second and third factors – temporal proximity and presence of

intervening circumstances – are similarly weighted in favor of the defendant. The credible

testimony offered by the witnesses at the hearing demonstrates that as soon as Coniglio realized

that Singleton was violating his curfew, he detained Singleton in his police car until a parole

officer could arrive. (Tr. 73-74, 120). Although the witnesses are not precisely consistent as to

the length of time that passed before Galbo arrived, they agree that it was not long – as short as

ten minutes, in Coniglio's recollection, and no more than thirty minutes, in Singleton's

recollection. (Tr. 74, 85-86, 120). Moreover, no intervening events occurred between the

detention and consent; as Galbo testified, he sought Singleton's consent no more than ten or

fifteen minutes after arriving at the scene. (*See* Tr. 87).

      Flagrancy of the official misconduct is the final of the four factors to be

considered and the only one I find to favor the government. As was made clear in this Court's

prior Report and Recommendation (Docket # 60), although I determined that the seizure and

search of Singleton was unsupported by probable cause, I considered the question to be an

extremely close one.  The very difficulty this Court faced in reaching its conclusion itself

demonstrates that the violation was not a flagrant one.  In addition, nothing on the record before

the Court suggests that any officer acted in bad faith.  To the contrary, I find that they acted in the

good faith belief that their actions comported with the law.

Nevertheless, when considering the four factors in their totality, I find that

Singleton's consent to the search of his residence was the product of the unlawful seizure and

was not so attenuated as to dissipate the unconstitutional taint.  Singleton was seized and

searched immediately after being approached by Officer Coniglio.  During the search, Coniglio

learned from Singleton that he was on parole and was violating his curfew.  Singleton was then

detained in the rear seat of a police car for ten to thirty minutes, after which he was questioned by

Parole Officer Galbo and consented to a search of his residence.  He was not advised of his

*Miranda* rights, nor was he told that he could refuse his consent to the search or consult with an

attorney about it.  To the contrary, Singleton testified, he believed that he did not have the

authority to refuse consent because such refusal would amount to a separate violation of his

conditions of parole.

In sum, on the record before me, I find that the government has not satisfied its

burden of demonstrating that Singleton's consent "was sufficiently an act of free will to purge the

primary taint of the unlawful" seizure, which occurred less than thirty minutes earlier.[4]  *See, e.g.,*

*Florida v. Royer*, 460 U.S. 491, 507-08 (1983) (suppressing evidence seized from defendant's

---

[4]  Although the factual scenario presented by this case could conceivably give rise to an inevitable discovery theory (depending upon facts not before this Court), the government has not advanced such a theory and relies only on the doctrine of attenuation.  Presumably, the government has concluded that it would be unable to demonstrate that Singleton's residence would inevitably have been searched on the night of May 19th had he not been arrested.

suitcase because his consent to search was tainted by fact that he had been unlawfully arrested

and detained approximately fifteen minutes earlier); *Taylor v. Alabama*, 457 U.S. 687, 691

(1982) (finding defendant's confession was not attenuated from unlawful arrest six hours earlier

because, although *Miranda* warnings were given, defendant was in custody and interrogated

without counsel on several occasions during six-hour period); *United States v. Ceballos*, 812

F.2d 42, 50 (2d Cir. 1987) (finding defendant's consent to search given within minutes of his

illegal arrest and his subsequent confession made several hours later were not attenuated); *United

States v. Richardson*, 949 F.2d at 859 (finding that taint of illegal arrest twenty minutes earlier

had not dissipated when defendant consented to search of his property after being detained in

police car during that twenty-minute period); *United States v. Webster*, 750 F.2d 307, 324-25 (5th

Cir. 1984) (finding that twelve-hour period between illegal arrest and defendant's statement did

not attenuate taint when defendant was in custody throughout that period, did not consult with

counsel and was not brought before a magistrate), *cert. denied*, 471 U.S. 1106 (1985); *United

States v. Isiofia*, 2003 WL 21018853, *6 (S.D.N.Y. 2003) (finding defendant's consent to search

was not sufficiently attenuated from defendant's illegal seizure and detention thirty to seventy-

five minutes earlier); *United States v. Clark*, 822 F. Supp. 990, 1008 (W.D.N.Y. 1993) (finding

second arrest occurring four hours after previous unlawful arrest not sufficiently attenuated);

*United States v. Delgado*, 797 F. Supp. 213, 221-22 (W.D.N.Y. 1991) (finding consent to search

given thirty to forty-five minutes after unlawful arrest not sufficiently attenuated).  *But see*, *e.g.*,

*United States v. Oguns*, 921 F.2d at 447-48 (finding that defendant's consent to search was

attenuated from earlier illegal entry into defendant's apartment because agents not only advised

defendant of his *Miranda* rights, but also advised him of his Fourth Amendment right to refuse

13

consent); *United States v. Cherry*, 794 F.2d 201, 206 (5th Cir. 1986) (finding defendant's consent sufficiently attenuated from unlawful arrest twenty-four hours earlier, during which time investigating agents independently acquired and confronted defendant with additional evidence, after advising him of his *Miranda* rights), *cert. denied*, 479 U.S. 1056 (1987).

I therefore recommend that the evidence seized from 119 Saratoga Avenue be suppressed.

I now turn to the question of suppression of the statements made by Singleton during the custodial interview.  As detailed in this Court's previous Report and Recommendation, following the search of 119 Saratoga Avenue, Singleton was transported to the Monroe County Public Safety Building and placed in an interview room.  Coniglio entered the room shortly after midnight, obtained Singleton's biographical information and advised him of his *Miranda* rights.  After reading the rights, Coniglio asked Singleton whether he understood and was willing to waive his rights and speak.  Singleton answered affirmatively to both questions and thereafter made several statements concerning the handgun and narcotics seized from his apartment.  (Docket # 60, 7-8).

As previously noted, the government bears the burden of demonstrating that the evidence it seeks to introduce is not tainted.  *See Brown*, 422 U.S. at 599.  Here, the government has argued only that Singleton's consent to the search was attenuated from his seizure and that all subsequently obtained evidence thus should be admissible.  No alternative argument has been advanced concerning the independent admissibility of the interview statements.

Determining whether Singleton's statements were sufficiently attenuated from the unlawful seizure requires consideration of the same four factors discussed in relation to the

14

search of Singleton's residence.  *See Brown*, 422 U.S. at 604; *United States v. Ceballos*, 812 F.2d

at 50.  As applied to this analysis, two differences are apparent:  the first is that *Miranda*

warnings were administered before Singleton's interrogation commenced, and the second is that

more time obviously had passed since the initial unlawful stop and seizure.  Neither

circumstance, however, counsels a different result.  *See Brown*, 422 U.S. at 599 ("Miranda

warnings, alone and per se, cannot always make the act sufficiently a product of free will [and]

break, for Fourth Amendment purposes, the causal connection between the illegality and the

confession").

       The facts of the instant case are similar in significant respects to those before the

court in *United States v. Ceballos*, 812 F.2d 42 (2d Cir. 1987), in which the Second Circuit

determined that statements made by a defendant several hours after an illegal seizure were not

sufficiently attenuated to permit their use by the government at trial.  In *Ceballos*, the defendant

was unlawfully arrested in the mid-afternoon hours in connection with a counterfeiting

investigation.  *Id.* at 44-45.  He was promptly advised of his *Miranda* warnings, and shortly

thereafter consented to a search of his brother's residence and his own residence, which

uncovered evidence of his complicity in counterfeiting offenses.  *Id.* at 45.  After the searches

were completed, at approximately 6:00 p.m., the defendant was transported to a United States

Secret Service field office, where he was interrogated and provided several incriminating

statements.  *Id.* at 45-46.

       On this record, the court concluded that the government had not demonstrated

attenuation because the defendant's consent to search was given within minutes of his illegal

arrest, which in turn led to the almost immediate discovery of incriminating evidence, which in

15

turn led to the prolonged interrogation resulting in the defendant's confession.  Despite the administration of *Miranda* warnings, the court held that "the consents to search and the statements given were too closely connected in context and time to the illegal arrest to break the chain of illegality."  *Id.* at 50 (citing *Florida v. Royer*, 460 U.S. at 502-03).  *See also Brown*, 422 U.S. at 604-05 (finding defendant's statement made less than two hours after his illegal arrest was not attenuated despite administration of *Miranda* warnings); *United States v. Delgado*, 797 F. Supp. at 221-22 (finding defendant's oral statements made ten minutes after unlawful search not attenuated despite administration of *Miranda* warnings during interviewing period).

In the case at bar, Singleton's statements at the Public Safety Building were clearly the product of his unlawful seizure and the search of his apartment.  Like the defendant in *Ceballos*, Singleton was initially seized without lawful justification.  That seizure eventually led to Singleton's consent to the search of his apartment and the discovery of contraband.  Within the next several hours, Singleton was placed in an interview room and questioned about that evidence.  Although Singleton was provided with *Miranda* warnings, as in *Ceballos*, I find that Singleton's seizure, the search of his residence and his statements were too closely connected in time and context to break "the causal chain of illegality."  *Ceballos*, 812 F.2d at 50.  Thus, I recommend that Singleton's motion to suppress the statements made by him at the Public Safety Building be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, it is my recommendation that Singleton's motion to suppress statements and physical evidence seized from his residence at 119 Saratoga Avenue **(Docket # 21)** be **GRANTED**.


                        *s/Marian W. Payson*
                          MARIAN W. PAYSON
                      United States Magistrate Judge

Dated:  Rochester, New York
        November   12  , 2008

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>**Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_____s/Marian W. Payson_____
                    MARIAN W. PAYSON
                    United States Magistrate Judge

Dated: Rochester, New York
            November ___12___, 2008

---

[5]   Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).